IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOHN SATKO, et al.,

    Plaintiffs,

    v.                                    CIVIL NO. 04-2117 (RLA)

WYNDHAM INTERNATIONAL,

    Defendant.

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This action was instituted by JOHN and SHELBY SATKO. MR. SATKO alleges disability discrimination as well as retaliation under both federal and state legal provisions. MRS. SATKO adduces constructive discharge.

The complaint is premised on the alleged discriminatory termination of MR. SATKO as well as purported retaliation while working at WYNDHAM EL CONQUISTADOR AND GOLDEN DOOR SPA ("EL CONQUISTADOR"). His wife alleges that upon her husband's termination she was subjected to harassment which eventually forced her to resign.

Defendant, WYNDHAM INTERNATIONAL, INC. ("WYNDHAM INTERNATIONAL") has moved the Court to enter summary judgment dismissing the instant suit claiming that it was never plaintiffs' employer at the time of the events alleged in the complaint. Movant further contends that plaintiffs failed to exhaust the requisite administrative remedies as

**CIVIL NO. 04-2117 (RLA)** **Page 2**

to their real employer, EL CONQUISTADOR, which renders these claims stale.

WYNDHAM INTERNATIONAL is the parent company of EL CONQUISTADOR and operates out of Dallas, Texas.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) Fed. R. Civ. P., which sets forth the standard for ruling on summary judgment motions, in pertinent part provides that they shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Sands v. Ridefilm Corp., 212 F.3d 657, 660-61 (1st Cir. 2000); Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir. 1999). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997). A genuine issue exists if there is sufficient evidence supporting the claimed factual disputes to require a trial. Morris v. Gov't Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994); LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). A fact is material if it might affect the outcome of a lawsuit under the governing law. Morrissey v. Boston Five Cents Sav. Bank, 54 F. 3d 27, 31 (1st Cir. 1995).

**CIVIL NO. 04-2117 (RLA)**                                                **Page 3**

"In ruling on a motion for summary judgment, the court must view 'the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.'" Poulis-Minott v. Smith, 388 F.3d 354, 361 (1st Cir. 2004) (citing Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir. 1995)).

Credibility issues fall outside the scope of summary judgment. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). *See also*, Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 432 (1st Cir. 2000) ("court should not engage in credibility assessments."); Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 49 (1st Cir. 1999) ("credibility determinations are for the factfinder at trial, not for the court at summary judgment."); Perez-Trujillo v. Volvo Car Corp., 137 F.3d 50, 54 (1st Cir. 1998) (credibility issues not proper on summary judgment); Molina Quintero v. Caribe G.E. Power Breakers, Inc., 234 F.Supp.2d 108, 113 (D.P.R. 2002). "There is no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, and no room for the judge to superimpose his own ideas of probability and likelihood. In fact, only if the record, viewed in this manner and without regard to

**CIVIL NO. 04-2117 (RLA)**                                                      **Page 4**

credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment.". <u>Cruz-Baez v. Negron-Irizarry</u>, 360 F.Supp.2d 326, 332 (D.P.R. 2005) (internal citations, brackets and quotation marks omitted).

In cases where the non-movant party bears the ultimate burden of proof, he must present definite and competent evidence to rebut a motion for summary judgment, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 256-257, 106 S.Ct. 2505, 91 L.Ed.2d 202; <u>Navarro v. Pfizer Corp.</u>, 261 F.3d 90, 94 (1st Cir. 2000); <u>Grant's Dairy v. Comm'r of Maine Dep't of Agric.</u>, 232 F.3d 8, 14 (1st Cir. 2000), and cannot rely upon "conclusory allegations, improbable inferences, and unsupported speculation". <u>Lopez-Carrasquillo v. Rubianes</u>, 230 F.3d 409, 412 (1st Cir. 2000); <u>Maldonado-Denis v. Castillo-Rodríguez</u>, 23 F.3d 576, 581 (1st Cir. 1994); <u>Medina-Muñoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990).

**FACTUAL BACKGROUND**

Plaintiff, JOHN SATKO, was hired in 1998 by WYNDHAM SUGAR BAY RESORTS ("SUGAR BAY") in St. Thomas, U.S.V.I., for the position of Executive Chef at said resort.

During his tenure at SUGAR BAY, MR. SATKO received his payroll check from said entity.

On October 28, 2002, MR. SATKO filled out a Transfer Request Form seeking transfer to the position of Executive Chef/Regional at EL CONQUISTADOR located in Fajardo, Puerto Rico.

**CIVIL NO. 04-2117 (RLA)**                                                          **Page 5**

---

On November 11, 2002, plaintiff JOHN SATKO was offered the position of Area Executive Chef at EL CONQUISTADOR effective December 1, 2002 which he accepted on November 13, 2002.

On July 10, 2003, MR. SATKO was terminated from his employment at EL CONQUISTADOR for failure to report for work for three consecutive days without authorization.

On December 30, 2003 MR. SATKO filed a discrimination charge with the Puerto Rico Department of Labor against WYNDHAM INTERNATIONAL exclusively. According to the charge, the last discriminatory event occurred on July 10, 2003. MRS. SATKO was not part of the charge.

Plaintiff, SHELBY SATKO, was hired on September 18, 2002, by SUGAR BAY as wedding coordinator for said resort.

On November 28, 2002, MRS. SATKO, a/k/a as SHELBY GLOSSIP, requested a transfer to EL CONQUISTADOR where she was hired as Spa Sales Manager in January 2003. MRS. SATKO resigned from her employment with EL CONQUISTADOR on August 18, 2003.

### PLAINTIFFS' EMPLOYER

WYNDHAM INTERNATIONAL denies being plaintiffs' employer and argues that they were employed by EL CONQUISTADOR instead.

However, "[u]nder the 'single employer' doctrine, two nominally separate companies may be so interrelated that they constitute a single employer subject to liability under Title VII." Torres-Negron v. Merck & Co., Inc., 488 F.3d 34, 41 (1st Cir. 2007).

**CIVIL NO. 04-2117 (RLA)** **Page 6**

The courts have used three different approaches for ascertaining whether an entity is amenable to suit pursuant to the single employer theory in Title VII cases. These are: "the integrated-enterprise test, the corporate law 'sham' test, and the agency test." *Id*. at 42 n.8; Romano v. U-Haul Int'l, 233 F.3d 655, 665 (1st Cir. 2000).[1]

"The factors considered in determining whether two or more entities are a single employer under the integrated-enterprise test are: (1) common management; (2) interrelation between operations; (3) centralized control over labor relations; and (4) common ownership." Torres-Negron, 488 F.3d at 42 (footnote omitted); *Id*. at 664.

Not all elements need to be present. "Rather, the test should be applied flexibly, placing special emphasis on the control of employment decisions." Torres-Negron, 488 F.3d at 42. The court will "follow the more flexible approach which focuses on employment decisions, but only to the extent that the parent exerts an amount of participation that is sufficient and necessary to the total employment process, even absent total control or ultimate authority over hiring decisions." *Id.* (citations, internal quotation marks and brackets omitted); Romano, 233 F.3d at 666.

Defendant argues that the requirements for the integrated enterprise are not met in plaintiffs' case. They point to the fact that both plaintiffs were (1) required to apply for their transfers

---

[1] The Court of Appeals for the First Circuit has not yet determined which, if any, of these tests is the appropriate one. Torres-Negron, 488 F.3d at 42 n.8; Romano, 233 F.3d at 664.

to EL CONQUISTADOR (2) instructed to submit all their personal information as new hires such as W-4 Forms, I-9 Forms and (3) placed in a separate payroll system. Further, defendant contends that EL CONQUISTADOR made the final employment decisions regarding matters related to plaintiffs' employment. Apart from suggesting names, WYNDHAM INTERNATIONAL purportedly played no role in the determination which led to plaintiffs' recruitment. Further, defendant avers that it did not intervene in MR. SATKO's termination or MRS. SATKO's decision to resign. Movant alleges that the parent company was merely informed when executive-level employees were terminated but had no decisional power in the matter.

According to defendant, as parent company WYNDHAM INTERNATIONAL established general quality standards and operating procedures which were adopted by the subsidiaries. The subsidiaries established their individual guidelines, policies and procedures regarding their day to day operations which included labor and employment matters such as recruitment, compensation, employee relations, discipline, unemployment and employees' termination.

Plaintiffs' version regarding the role played by WYNDHAM INTERNATIONAL in the hiring and transfer process of JOHN SATKO and during his tenure both at SUGAR BAY and EL CONQUISTADOR portrays a different picture.

According to MR. SATKO, it was RICH CORTESE, Senior Vice President of WYNDHAM INTERNATIONAL, WYNDHAM RESORTS DIVISION who

contacted him in 1998 and offered him the position of Executive Chef at SUGAR BAY. MR. SATKO was subsequently interviewed via telephone by the SUGAR BAY's manager who advised plaintiff that his hiring had to be approved by WYNDHAM INTERNATIONAL. Thereafter, plaintiff was interviewed, also by telephone, by WYNDHAM INTERNATIONAL Corporate Chef.

MR. SATKO further avers that the employment offer for SUGAR BAY was sent by MARY WATSON, Human Resources Director for WYNDHAM INTERNATIONAL, along with a compensation worksheet. The letter specified the circumstances for terminating his "assignment" to SUGAR BAY and noted that in the event "the company" concluded its relationship with SUGAR BAY "Wyndham will provide you with options for your consideration in order to continue your employment with Wyndham Hotels & Resorts." Relocation arrangements had to be coordinated with WYNDHAM INTERNATIONAL's Corporate Office. A Promissory Note for Relocation Expenses payable to WYNDHAM INTERNATIONAL was also forwarded. MR. SATKO sent his acceptance letter to MS. WATSON.

During the time plaintiff worked at SUGAR BAY he was contacted on several occasions by MR. DAMERON, WYNDHAM INTERNATIONAL's Corporate Chef, proposing transfers to other WYNDHAM properties. After four years at SUGAR BAY, pursuant to an offer made by MR. DAMERON, on October 28, 2002, plaintiff requested transfer to EL CONQUISTADOR by filling out a Transfer Request Form bearing the

WYNDHAM INTERNATIONAL logo. The Transfer request was sent to WYNDHAM INTERNATIONAL.

On December 2, 2002, WYNDHAM INTERNATIONAL forwarded plaintiff an Approved Transfer Notice which included: an Offer Letter dated November 11, 2002, signed by EL CONQUISTADOR's General Manager, a Transferee Letter issued by WYNDHAM INTERNATIONAL regarding the transfer process and the applicable tax withholding forms for the new location.

The offer of employment advised plaintiff: that he would be entitled to continue his "participation in the Company's and hotel's benefits and privileges; instructed plaintiff to send his acceptance letter to WYNDHAM INTERNATIONAL's Human Resources, and to contact WYNDHAM INTERNATIONAL's Corporate Office to initiate his relocation process. Lastly, plaintiff was apprised that "[e]mployment at Wyndham International [was] on an at-will basis."

Upon his arrival at EL CONQUISTADOR, plaintiff was provided with a copy of a "Wyndham International Employee Handbook" which indicates that it was "designed to provide information to employees at WYNDHAM INTERNATIONAL locations regarding various policies, practices and procedures which may apply to them."

MR. SATKO further indicated that while employed both at SUGAR BAY and at EL CONQUISTADOR he "was contacted by Wyndham International on a regular basis, through phone calls, letters, memos, emails and visits [and that his] employment and employment conditions were

**CIVIL NO. 04-2117 (RLA)**                                                   **Page 10**

strictly supervised by Wyndham International Corporate Office."[2]

Upon his termination at EL CONQUISTADOR plaintiff immediately contacted KRISTIN NOWAK at WYNDHAM INTERNATIONAL's Human Resources Department and his COBRA Notice of Eligibility was forwarded by WYNDHAM INTERNATIONAL.

In her deposition WALESKA OTERO MAESTRE advised that she was the Director of Human Resources at El San Juan Hotel and in 2001 was also assigned duties as Area Director of Human Resources for the WYNDHAM INTERNATIONAL properties Puerto Rico and the Caribbean. In that capacity she served as a liaison between WYNDHAM INTERNATIONAL and its properties within this geographical area providing them with service and support. According to the deponent, she received policies and procedures directly from WYNDHAM INTERNATIONAL and handled inquiries regarding those policies and procedures applicable to the human resources area submitted by defendant's various properties in Puerto Rico.

MS. OTERO MAESTRE indicated that even though the Hotel's General Manager had the authority to terminate employees, she had to be informed of those decisions regarding executive-level positions.

She also stated that plaintiff was terminated for "job abandonment", a WYNDHAM INTERNATIONAL policy.

Additionally, she testified that revisions to the employee's handbook had to be approved by WYNDHAM INTERNATIONAL's legal counsel.

---

[2] Statement under Penalty of Perjury ¶ 22.

**CIVIL NO. 04-2117 (RLA)**                                                  **Page 11**

---

LUIS ALVAREZ, EL CONQUISTADOR's Human Resources Director, confirmed that EL CONQUISTADOR received guidelines regarding recruitment from WYNDHAM INTERNATIONAL.

As indicated in <u>Torres-Negron</u> not all listed factors need to be present in order to find that separate entities function as an integrated enterprise for liability purposes.[3] Rather, the court must focus on whether a parent company sufficiently participates in its subsidiary's employment process to affect employment decisions even though it does not have the final authority over hiring determinations.

We are satisfied that the evidence proffered by plaintiffs in this case is sufficient for a reasonable trier of fact to find that WYNDHAM INTERNATIONAL was sufficiently involved in the employment process of its subsidiary to be also deemed plaintiffs' employer. WYNDHAM INTERNATIONAL was actively involved in the entire hiring and transfer process; MR. SATKO was regularly contacted and strictly supervised by defendant, and uniform employment policies were set by WYNDHAM INTERNATIONAL.

---

[3] In this particular case common ownership is uncontested.

**CONCLUSION**

Based on the foregoing, defendant's Petition for Summary Judgment (docket No. **14**) is **DENIED.**[4]

IT IS SO ORDERED.

San Juan, Puerto Rico, this 23rd day of October, 2007.

                                                S/Raymond L. Acosta
                                                RAYMOND L. ACOSTA
                                    United States District Judge

---

[4] See also, plaintiffs' Opposition (docket No. **52**) and defendant's Reply (docket No. **56**).